Good afternoon, may it please the court. My name is Todd Hayes representing the appellant Belmont Seattle LLC. The sole issue in this appeal is whether an exception to what the parties have referred to as the alienated premises exclusion in centuries policy potentially applies such that there's a party's duty to defend. Counsel, I have to ask you some questions about who the players are here. The first question is whether you represent the Bahu's or not because it appears to me that they neither filed their own brief nor joined in your briefing and I just and if that's true then perhaps their appeal should be dismissed and I wanted to clarify that with you. I do not represent the Bahu's and your understanding is consistent with mine about what they filed. Okay, now my other question is more fundamental to your argument and it is if it matters whether someone is a named insured or not, which is another question I want to leave aside, it appears to me that the only named insured is IPAH and I'm looking at ER 312 and it's ambiguous to me because the change is to add Belmont Seattle LLC as a quote location and I don't know what that means. Does that mean that Belmont Seattle is just one iteration of IPAH or what does that mean? Your Honor, we argued in the trial court that there was ambiguity there and it was possible that Belmont Seattle was an named insured and therefore the exclusion didn't apply in the first place to Belmont Seattle regardless of the exception issue. We've conceded for purposes of the appeal that Belmont Seattle LLC to the extent it's a named insured under the policy. We've conceded that issue and then argued that even if it is a named insured. But I don't understand how you can concede that concession is one we have to accept but I just didn't understand it and it may just be me but I don't read this as saying that Belmont Seattle is also a named insured. It just says this location is added to the policy and then they give your address. Your Honor, I believe that you are correct. There is ambiguity there as to whether they're an insured or a named insured. We felt that the trial court was confused by that argument and so it made more sense to just address the alienated premises issue with the assumption that they were a named insured. It's clear from this IPAH entity or program if you will. Actually it's not an entity even. It's a program by a broker. The purpose of the policy was to create property insurance coverage for this building which was owned by Belmont Seattle LLC. Now typically you would have that happen by naming the entity that owns the building as the named insured and so we didn't feel that it was inconsistent with that to accept Century's argument that Belmont Seattle was a named insured and they've argued that Belmont is. If you believe that there's ambiguity there and Belmont Seattle could be an insured as opposed to a named insured, then the alienated premises exclusion doesn't apply in the first place because Belmont Seattle is not a U as we explain in our reply brief. And if you don't have any other questions... None I can put into comprehensible form I think. So even if Belmont Seattle is a named insured, the district court committed reversible error by granting summary judgment because this exception to the alienated premises exclusion would apply even if Belmont Seattle LLC were a named insured. There are two particularly relevant rules of Washington coverage law here. First of all, undefined terms are governed by what's in the standard English language dictionary under Washington law. And second of all, if there's any ambiguity in a policy, the rules construe in Washington law, construe that ambiguity in favor of the policyholder. So essentially that means if you've got two potentially applicable definitions, the courts pick the one, pick the dictionary definition that most favors the insured. As we explained in the opening brief, one dictionary definition of rent is to take and hold under an agreement and therefore somebody who holds something out for rental does so under an agreement, at least under one dictionary definition of that word. So even if other definitions might apply to the phrase hold for rental, that one is the one the court should adopt and using that one, the exception applies because the other elements of the exception are also satisfied. It's undisputed that the premises are your work and it's or rented as a tenant would pay rent by Belmont Seattle LLC. Let me ask you, of the 11 units that were sold during the, while the policy was still in effect, how many had been vacated by the rental tenants prior to that date, the April 30th, 2007 date? The record is unclear about how many were vacated versus unvacated. There's a document in the record from March that talks about the number of occupied versus unoccupied units, but there was no evidence submitted as to the number of unoccupied units as of the date that Belmont Seattle was deeded the property. Now again, our position is that's irrelevant because a dictionary definition of held for rental is allowing somebody to occupy a unit pursuant to a rental agreement, not simply taking over a building that happens to be occupied by people who are paying rent to somebody else. And a good analogy is my home presumably is zoned for allowing tenants to be rented there, but the fact that that's allowed doesn't mean that I'm holding it for rental. It's only held for rental when the person that owns the property is actually entered into an agreement with the tenant who's paying the rent. How about, apart from the fact that they are legal distinct entities, is there any meaningful difference between Belmont Seattle LLC on April 16, 2007 and the joint venture on April 15, 2007? I'm not sure what you mean by is there a distinction between the two. Belmont Seattle had no connection to this building until it was deeded the property on April 25, 2004. The property before that date was owned as tenants in common by these distinct entities, including Westmore, and at that point it was deeded to Belmont Seattle LLC, which of course under Washington law is a distinct entity from Westmore LLC. Were there any changes in organizational structure, operations, management of funds, ownership of assets, any important aspect of how these two entities did business? Yes? There's nothing in the record that discusses how the entities did business, but by definition every aspect of how they did business was distinct because they're distinct entities. Money that was collected by, for example, Westmore. The answer to my question is, from your view, no, but they're still distinct legal entities. Correct. There's no evidence that the operations were the same. Maybe your point is that is there any evidence that they're alter egos, disregarding the corporate distinction, and there is no evidence of that. They are distinct entities and there's no evidence that any money that was ever anything that was ever done by Westmore was attributable to Belmont Seattle LLC. Although Belmont Seattle LLC obviously was in a similar business in the sense that it became the owner of this building, there is no connection between the operations of Belmont Seattle LLC and Belmont Joint Venture. Although Westmore continues on as part of Belmont. Continues to exist, correct, but nothing in what they did and in particular nothing in that Washington Administrative Code provision trumps the fact that under Washington law, Belmont Seattle LLC is a distinct entity from Westmore LLC and is a distinct entity from all of the other tenants in common that deeded the property to the LLC. Did Belmont Seattle receive any, did it ever receive any rental income or financial benefit? No. After it was formed in 2007. It never received any. No. According to ER 63 and ER 64, any rental income was paid to Westmore. Belmont Seattle LLC never received that rent directly, and more importantly, it never received any financial benefit from that rent indirectly. And you're saying Westmore is separate from Belmont? Correct. They are distinct legal entities. Any rent that was ever collected was collected by Westmore, not Belmont Seattle. But then you said that that meant that Belmont Seattle had no interest in the money, but if an indirect financial interest at least. It would go the other way around. If Belmont Seattle collected money, then Westmore would have a financial interest in that. But I may be a shareholder in Microsoft, but when Microsoft earns money, that doesn't necessarily mean that I earn money. They're distinct legal entities. More importantly, let me back up and emphasize, even if collecting money is a definition of holding something for rent, another definition of holding something for rent is doing so under an agreement. So ultimately, the receipt of money is irrelevant because the court is supposed to pick the definition that most favors Belmont. I'd like to reserve the rest of my time for rebuttal. You may do so. Excuse me. I've got a cold. Good afternoon. May it please the court. Dana Ferristein on behalf of Century Shirty Company. I'm going to start the same place with you as I did with the opposing counsel. I assume from your briefing that you believe that the Imbahu's should be dismissed for failure to respond on appeal. That's correct. Okay, now we get to what I find the challenging part, which is the difference between an insured and a named insured. And first, I want to know if Belmont Seattle is not a named insured, what difference does that make in our analysis? Your Honor, that would take you down a totally different path, but you would get to the same conclusion that the district court got to, which is that there's no coverage. Because why? Because unless Belmont Seattle is a named insured, they're not an insured under this policy at all. The named insured under the original policy that was issued is IPAW, and if you look at the policy, and just kind of stepping back, what you'll see is this is an apartment house policy. It was issued for an apartment risk pool, and Belmont Seattle was not a part of this policy in any way, shape, or form until April, I believe, of 2007. And then at that point, and this is in fact in the district court record, although I was having a little bit of trouble finding it in the record that was submitted to this court because it wasn't briefed, but there's actual email correspondence in which it's stated that Belmont Seattle is intended to be added to the policy as a named insured. Okay, well, the actual policy language is what confuses me. It's at page ER 312, and the named insured is IPAH, and the changes described as in consideration of the additional premium of blah, blah, blah, the following location is hereby added to the policy. So it's your view that location means that they become a named insured? Well, certainly that was the intention of the parties, and when you look at the extrinsic evidence that was before the trial court, there was an express statement by the representative of Belmont Seattle that Belmont Seattle was to be added as a named insured. So adding that email, I think you get the clarification that's needed in order to get to the issue that's currently before the court. Okay, let me just follow this for just a second to clarify it in my own mind. I'm having a little trouble with your view that if they're not a named insured, they're not insured at all because there's an additional premium, and they're hereby added to the policy. So it seems impossible to view them as either a named insured or nothing at all. Well, Your Honor, we're not advocating that position, but if you look at the endorsement, what it says is that the location has been added. So what that would mean is that to the extent that there are losses, occurrences either involving property damage or bodily injury, that there would be coverage at that location. Correct. I understand that, but I don't know why that makes you a named insured as distinct from a regular lowercase insured. Well, if you look at the definition of who is an insured in the policy, and you can get that out and walk through the elements of that section of the policy, you'll see that it defines who else qualifies as an insured based on their relationship and their capacity in relation to the named insured, IPAW. And there's no evidence in the record that Belmont Seattle has any relationship to IPAW in terms of acting on their behalf as an employee or other type of agent. And if that's the case, then they wouldn't qualify as any kind of insured at all unless you interpret the endorsement to make them a named insured. And that's further clarified again by the email that was in fact before the trial court. And I can get the court a site either by supplementing the record or finding it for you when I sit down. If I may, I'm going to turn to the remainder of the issues. The parties essentially agree that there's a narrow issue before the court, and ultimately what it comes down to is whether or not the insured never rented or held out for rental the insured property. But respectfully, the distinctions that are being drawn here are far too fine in terms of what a reasonable person would naturally understand from reading this policy language. And if one steps back and thinks about it in terms of just how we communicate with one another in common parlance, I think we get a pretty good idea of it. So if, for example, I own a duplex and I've got some tenants in there, and somebody comes to me and says, are you renting your duplex? Well, the answer is yes. And then you ask yourself the question, okay, does that change if I happen to have a property manager who's acting on my behalf? And somebody comes to me and says, are you renting your duplex? Well, I don't respond by saying, well, no, my rental company is doing that for me. And similarly, if, for example, I've recently acquired a duplex and I've got tenants in it, and those tenants are already there, they executed an agreement with somebody else, and somebody asked me the question, are you renting your duplex? Again, the answer is yes. I'm not going to say, well, no, I'm not renting it. Someone else rented it previously. People understand the word rent. Go ahead. I'm sorry. You say my rental company is doing it for me, but what if that's in dispute of whether it is your rental company or not, and it presents a question of fact? Then doesn't it go forward to trial to determine who's right? It very well could be that you're right, but it seems like that is hotly disputed. And that's where my focus is as to whether or not it was appropriate to stop the case at that point. Well, Your Honor, and I understand the question, and I appreciate the opportunity to clarify it. There really is no dispute, or there was no dispute at the trial court level. The undisputed evidence before the trial court was that Westmore Management put together this joint venture, and if you look at it, you'll see that Westmore Management is the manager of the joint venture, and there's a very broad provision in there that gives them all the rights to manage this entire thing. And then in April of 2007, there's a change in ownership, and all it says in the quit tax affidavit is that this was a mere reorganization. There was no change in beneficial ownership, and what Ms. Bahu says in her declaration is that Westmore Management had been working to move everybody out. Well, what that means is that Westmore Management was managing the property and dealing with the tenants of the building that was owned first by the joint venture, and then as a continuation, Belmont, Seattle. So there really is no evidence from which any reasonable fact finder could conclude that Westmore was some sort of rogue entity that wasn't managing the building on behalf of the company of which it was an LLC member. Actually, the argument was not made to the district court that they were distinct legal entities. Well, I haven't reread all the briefing recently, but that's certainly the focus on appeal, from my perspective, is vastly different than the focus at the trial court level. They decided that didn't work, so let's try something different. Let me ask you, I'm looking on page 5 of the insurance policy, ER 267, although it's probably found many other places, too, and it's the definition you've been quoting, paragraph 2 of this exclusion does not apply if the premises are, quote, your work, end quote, and were never occupied, rented, or held for rental by you. What's the difference between rented and held for rental? They seem to be distinct here. Is one sort of intentional, you hold it for rental, but you haven't rented it out yet, and rented is you've actually rented it, or is there some other difference that I'm missing? Well, the way I read it and the way I understand it, Your Honor, in trying to give a plain dictionary interpretation, I think it's important to first look at the word occupied and understand that occupied is there as well. Right, occupied by you, that's not really our problem. Okay, so from my perspective, the meaning of the word occupied tells us that what they're not talking about is you renting the property. That's not what we're talking about, is you in terms of you being a renter. Correct. No, I understand. Renting the property, meaning you own a piece of property for which you're a landlord. That's what rented means. Right, but how is that different from held for rental? Is that you, the landlord, looking for a tenant and you don't have one yet? That's how I understand it, is in effect, you're holding it out for rental to the world, saying, if you'd like to rent this, please come and rent. Got it. So let me approach this, because I'm trying to follow the language here as well. And it seems that you is defined as the named insured shown in the declarations, and any other personal organization qualified as a named insured. Is that correct? I believe that's the language. All right. And it's my understanding that you're arguing that Westmore, which I think is undisputedly not a named insured, but maybe because that's how you guys, how you, I'm sorry, the lawyers decided to approach it, that they're not the named insured. Is that right? They're not the original named insured under the policy. All right. They are an agent of the named insured. All right. So that's what you're arguing, that they still count as you under the exception. That's your position, right? Westmore does? That's part of our position, yes, Your Honor. Because as a member of Belmont LLC, it is an insured, even though it's not the named insured. Yes? I believe so, if I'm correct. Okay. It seems to me that Westmore, an insured, has to qualify it as a named insured. This is maybe going at it a different way than what Judge Graber was asking about. Even though it technically isn't one. If this is the case, what's the difference between an insured and a named insured? I guess I just want to ask it one more time to figure out what your position is between those two and if what your interpretation is on that. And shouldn't the policy just say that you means any entity that's insured, whether named or not? Well, there are certain instances in which the policy draws distinctions between the named insured versus other insured. So, for example, the owned and alienated property exclusions are intended to coverage for property damage to property that is owned or sold by the named insured. If, for example, I was the LLC or the president of an LLC that was a named insured, it wouldn't be the position of the insurance company that my home that I personally own qualifies as property that I own or property that I sell. Rather, it's the owned property of the named insured, the LLC. So here, Belmont, Seattle's property is the property that's subject to the owned and alienated property exclusions. Does that answer your question or have I missed the mark? Well, the answer is what your theory is on this. But... Let me just back up for a moment and kind of get big picture here. And these are materials that Belmont, Seattle cited to the district court. The owned and alienated property exclusions are designed to, in effect, erect walls and make sure that there's not redundant insurance. If there wasn't an exclusion for owned property and first-party property coverage and third-party property coverage, meaning property insurance and liability insurance, would kind of meld together. And the liability insurers a long time ago said that's something we're trying to avoid. And so, if you look at the materials, this is at page ER-218 and 219. In talking about the alienated property exclusion, the commentator says this, by this specific exception, the alienated premises exclusion J2 does not apply to premises built and held vacant by the named insured. And that's really the crux of what this exclusion is about. The question is whether or not the insured that we're talking about held the property vacant. And that's exactly what we don't have here. The undisputed evidence is that both before and after the change in nominal ownership from the joint venture to Belmont Seattle, this building was occupied with tenants. And that's the exact circumstance that the commentator that they cite to was intending to have excluded. So, for that reason, we believe that Judge Peckman reached the right conclusion and granted summary judgment in favor of Century. If there are more questions, I'm happy to field them. Otherwise, I'm going to sit down. I think there are not. Thank you. Mr. Hayes, you have a bit of time remaining. Let me kind of go in reverse order, if I may, and hit the named insured versus insured issue. And it's understandable why you're confused, because Century misstated the policy language on page 7 of its opposition brief. It said, you means the named insured, Belmont Seattle, and any other person or organization qualifying as a named insured under this policy, including the LLC's members, including Westmore Management. The problem is, if you look at the definition section that Century cites to, it says that LLC members are little i insureds, not capital N, capital I, named insureds. So, although Westmore is an insured, it is not a named insured. And as you were just discussing a second ago, you is defined only as a named insured, not a little i insured. Would you answer the big picture question, though, apart from the lowercase and uppercase? And that's my biggest concern with your position. You have condos, apartments that are occupied by tenants, that is renters, persons who do not own but are paying rent. And that reality continues both before and after the quitclaim deed. So, I guess I'm having trouble kind of with the big picture, how that fits into your scenario. I have two responses to that. First of all, there is no evidence in the record that anyone occupied this building as a tenant, much less paying rent to Belmont, Seattle, after April 24th. There's an implication to that effect because Century cited a document from March, but there is no evidence that anybody was actually living there after April 25th. Excuse me. Second of all, it wouldn't matter because Washington cases, and I apologize, I can't cite any off the top of my head, but I've seen many of them say, we don't change policy language in favor of the insurance company under the guise of public policy. So, one can say that this is- I'm not asking you a public policy question, though. I'm asking you, you're saying there's no evidence in the record that there were any persons renting after the- Correct. I'm not aware, I'm aware of the argument- I thought that was, I thought that was undisputed. No, what happened is Century said that because there were some requests for admission that were the subject of a motion for protective order that that was deemed admitted, but I don't believe that that's what the record says. But regardless, the key point under Washington law is even if taking a building that's occupied by tenants was a reasonable interpretation of the phrase rented or held for rental, another reasonable interpretation, according to the dictionary, and Washington courts say that's what we use, another reasonable interpretation is holding it under an agreement between you and the tenant, and there's no evidence that Belmont, as opposed to Westmore, ever entered into any such agreement. So, for that reason, we're asking not only that the court reverse the district court's order, but also that the court enter judgment in favor of Belmont on this particular issue, whether there was a duty to defend or not. Thank you. Can I speak? One question, I'm sorry. Yes, please, go ahead. I just wanted to clarify because opposing counsel said that it was never an issue before the district court that Westmore was an agent of Belmont, that that really wasn't the case. Is that true? That is absolutely incorrect. It's undisputed that Westmore is a member of Belmont, but there is no argument, much less undisputed argument, that they were an agent. And as you pointed out, agency is a question of fact. There was an argument in the opposition brief that they collected rent as an agent, but the argument was that they collected rent as an agent for the fellow joint venturers. That was on page 21 at the top of Century's opposition brief. Belmont wasn't one of those joint venturers, so to the extent that that argument even exists, it would go to the other joint venturers, not to this distinct entity, Belmont Seattle LLC. Thank you. Thank you, counsel. Thank you, Your Honor. The case just argued is submitted.
judges: Tashima, Graber, Murguia